# 24-2363

_____

UNITED STATES COURTS OF APPEALS
FOR THE SECOND CIRCUIT
_____

JAHQUAN SPENCER,

Plaintiff, Appellant

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS,
GLENNETTE CYRUS, ARACELI REYES, ETAL

Defendants, Appellees.

_____

On Appeal from the United States District Court
for the Eastern District of New York

_____

Brief of Appellant, Jahquan Spencer

Jahquan Spencer, Pro Se
P.O Box 261, Port Washington, N.Y 11050
631-690-5015

Table of Contents

Page

Table of Contents………………………………………………………………..........I

Table of Authorities……………………………….................................................II

Statutes Rules……………………………………………………………….......III

Statement of Subject Matter and Appellant Jurisdiction …………………………...1

Statement of the Issues ……………………..……………………………….....…...2

Statement of the Case…………………..…………………………....……………..2

Statement of the Facts……………………...…………………………………….....2

Procedural Background………………………………………………….…….....5

Summary of the Argument……………………………………………….…......9

Standard of Review…………………………………………………….……..8

Argument…………..……...……………………....…………………………......…9

Conclusion……………………………...……………………………………......12

Certificate of Compliance………………………..………………………………..13

Certificate of Service………………………….…..…………………………….....attached

Page

Table of Authorities

*State cases*

Brown v. New York Design Ctr., Inc., 2023 WL 2417772
(N.Y. App. Div. 1st Dept Mar. 9, 2023)……………………………………………...…10,11

Sharpe v. St. Lukes Hosp., 573 Pa. 90, 821 A.2d 1215 (Pa. 2003)…………………………………9

Spencer v. Rabu Diagnostic Services Index No. 000949/2019…………………………............6

Spencer v. EAC Network, index No. 03870/2019………………………………………......................6,7

Taggart v. Costabile, 131 A.D.3d 243, 253, 14 N.Y.S.3d 388
( N.Y App. Div. 2d Dep't 2015)………………………………………………..............10

*Federal cases*

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)…………………………………………………..9
Atateks Foreign Trade Ltd. V. Private Label Sourcing,
    LLC, 402 F. App'x 623, 625 (2d Cir. 2010)……………………………………………8
Bell Atlantic Corp. v. Twombly, 550 U.S 544, 570 (2007)……………………………………..8,12
Bertuglia v. City of N.Y, 839 F. Supp. 2d 703 (S.D.N.Y 2012)…………………………….......11

Biswas v. City of N.Y., 973 F. Supp. 2d 504 (S.D.N.Y. 2013)…………………………………11
Coleman, 30 F. Supp 2d at 365 (E.D.N.Y 1999)……………………………………………..9
Drake v. Lab. Corp. of Am. Holdings, No. 02 Civ. 1924 (FB) (RML),
   2007 WL 776818, at 2 (E.D.N.Y. Mar. 13, 2007)……………………………………….....9
Landon, 22 N.Y.3d at 7……………………………………………………………………9
Landon v. Knoll Lab. Specialist, Inc., 91 A.D.3d 79……………………………………………11
Landon v. Knoll Laboratory Specialist, Inc., 22 N.Y.3d 1, 4-6 (N.Y. 2013)………………10
Gonzalez v. Aramark Food & Support Servs. Grp., Inc, No. 09 Civ. 4843 (CBA),
Ornstein v. N.Y.C Health & Hosps. Corp. 852 N.Y.S.2d 1,3 (N.Y 2008)……………………10

Pasternack v. Laboratory Corporation of America Holdings, 7 N.Y.3d 817, 820-821, 826-827
(N.Y.    2016)....................................................................................................................9
Shaw v. Psychemedics Corp., 426 S.C. 194, 200 (S.C 2019)…………………………………..9

Steele-Warrick v. Microgenics Corp., 19-cv-6558 (VMS) (E.D.N.Y Mar. 22, 2021)………………11

II

Page

Statutes & Rules

Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6)……………………………………………8

Fed. R. Civ. P. 54(b) …...……………………………………………………………….……….2

28 U.S.C. § 1332……………………………………………………………………....................1

28 U.S.C § 1291…...………………………………………………………………….……...….1

Statements of Subject Matter
and Appellate Jurisdiction

The judgment appealed, was rendered on August 16, 2024 by the honorable Joan Azrack, United States District Judge for the Eastern District of New York.

As here pertinent, Appellant state law claims (a) against the Appellees, under 28 U.S.C. § 1332, for damages arising from Appellees negligence in administering, interpreting, and then misrepresenting the drug test results of Appellant Mr. Spencer by engaging in practices outside forensic laboratory standards that caused damages to Appellant. The Eastern District of New York Court found that substantive New York law applies to the diversity action and no party argued otherwise.

This Court has jurisdiction over the Appellants' appeal under 28 U.S.C § 1291. The district court order directing the entry of final judgment was entered on August 16, 2024. Appellants filed their Notice of Appeal timely on September 3, 2024.

1

<u>Statement of Issues</u>

1. Did the District Court correctly Dismiss Mr. Spencer Negligence claim?

2. Did the District Court correctly determine Mr. Spencer Negligence claim that is viewed as Negligent Infliction of Emotional Distress isn't plausible?

<u>Statement of the Case</u>

The statement of the case appearing in this brief on page 1 is substantially accurate. After the events described in this brief, the Eastern District Court of NY issued an order directing entry of final judgment under Fed. R. Civ. P. 54(b), dismissing all four New York State claims, Fraud, Fraudulent Concealment, Intentional Infliction of Emotional Distress and Negligence on August 16, 2024. Appellants pursue his appeal on one New York claims (Negligence and or Negligent Infliction of Emotional Distress), out of the four New York State claims that were dismissed.

# I. Statement of Facts

## A. Background

### 1. Overview

On August 28, 2019, Appellant ("Jahquan Spencer") or ("Mr. Spencer"), commenced a diversity action against Laboratory Corporation of America Holdings ("LabCorp") and Psychemedics Corporation ("Psychemedics"). On November 30, 2020, Pychemedics was dismissed from the action. Thereafter, on March 18, 2022, Mr. Spencer filed a second amended complaint ("SAC") asserting state law claims for fraud, fraudulent concealment, intentional infliction of emotional distress and negligence against LabCorp and added two new individuals as defendant named Glennette Cyrus ("Ms. Cyrus") and Araceli Reyes ("Dr. Reye") 1.

### 2.Family Court proceedings and Parents November 2017 and July 18 Drug Test

Prior to Ms. Cooley and Mr. Spencer requesting hair test from private collectors. Both parents attended drug and parenting programs and completed drug and parenting programs successfully. _____

On July 10, 2018, Cooley and Spencer attended a permanency hearing at family court. Cooley requested for unsupervised visitation with her children. As a result, CPS requested that family court reserve judgment until Cooley submitted another hair test. _____

On July 11, 2018, Cooley provided a hair sample for her hair follicle test. _____ On August 17, 2018, Ms. Cooley had not gotten her results back from her (July 2018) hair test. \_\_\_\_\_ Therefore, she took a self-paid $150 hair test at Rabu Diagnostic Services (Rabu), Garden City, NY. Cooley requested Rabu to ship her hair sample to Omega for testing (August 2018) hair test. Omega reported that Cooley was Negative for all substances within 90-day intervals. _____

Between July 2018 and December 7, 2018, Cooley personally questioned E.A.C to find out why the results of the July 2018 hair test were not reported until August 14, 2018, and why the report stated that the collection was on 07/10/18, 07/12/18, and not 07/11/18.

The parents response from the beginning to the end of family court proceedings was that they weren't supervising their child within the hours of the alleged positive test and the aunt who was supervising their child stated she doesn't use drugs. Also, that they (Cooley/Spencer) didn't use drugs.

_____
1  The case arises from a proceeding on November 27, 2017, where Ms. Cooley and Mr. Spencer attended an abuse and neglect hearing at Suffolk County Family Court ("Family Court") as a result of being accused of doing so to their children. Suffolk County CPS accused parents Bernadine Cooly ("Ms. Cooley)" and Mr. Spencer of abusing and neglecting their children based on claiming that one of their children's urine test was positive for cocaine. As a result, the parents lost custody temporarily and their children was temporarily placed in a relative custody from 11/22/17-July 17, 2019. The parents'

3

For this reason, E.A.C a sample collector for Family Court collects urine and hair samples and ships off to forensic laboratories to be performed. Both parents had their urine and hair test samples collected where E.A.C allegedly shipped the parents hair samples to Omega. Both parents was negative on their urine test, Cooley's head hair and Spencer's underarm hair test allegedly tested positive for cocaine within 90 days for Cooley and within 12 months for Spencer. Thereafter, Cooley and Spencer attended drug and parenting programs and completed drug and parenting programs successfully.

E.A.C told Cooley that their "system" was down and therefore wasn't able to access the database for more than a month. E.A.C also said they did not know the date the system went down. Ms. Cooley used the negative test result to dispute the prior false cocaine positive hair follicle test collected by E.A.C on July 2018 that was alleged to be positive for cocaine.

Parents believed due to the conflicting test results of Ms. Cooley, ongoing documents appearing tampered with for both Ms. Cooley and Mr. Spencer, incorrect dates of Ms. Cooley reports by E.A.C/ Omega, Ms. Cooley's hair test reports excessively delayed from average timeframe of Omega, E.A.C stating the system was down for several weeks and Omega stating that their system has never been down, both Cooley and Spencer believed that both of their samples were being tampered/ falsified and or there was a breach in the chain of custody of their tests, such that the samples were never truly shipped by E.A.C or received by Omega.

**3.Private Hair Test Collection and Urine test**

On August 17, 2018, Cooley paid for a private hair test through Rabu in order to protect herself against false positive results in Family Court. Rabu shipped Ms. Cooley hair sample to a Omega Laboratory for performance of hair test. Cooley
was told by the court that her July 2018 hair test was positive for cocaine and Cooley requested to dispute the cocaine positive for July 2018 hair test. Thereafter, Spencer objective was to have private hair test to protect him from false positive hair test
in Family Court.

On August 28, 2018, Mr. Spencer went to Rabu and requested a hair test. Rabu collected Mr. Spencer hair and stated that they would ship Mr. Spencer hair sample to Labcorp instead of Omega because their computer would allow them to choose Omega Laboratories due to a glitch with Omega system. Mr. Spencer was given a copy of the donor report after his hair sample was collected.

On September 4, 2018, Mr. Spencer received an email from Rabu of Labcorp (9/1/18) hair test report of being being positive for cocaine.

On October 29, 2018, Rabu referred Mr. Spencer to Labcorp in regards of ordering a litigation package after Mr. Spencer complained of his hair test being falsified or his hair specimen being tampered with.

4

**4.     Mr. Spencer and Ms. Cooley identical authentic version"Labcor;" Urine and Hair Follicle Reports**

On August 17, 2018, Mr. Spencer took a urine test for ("TLC") Taxi & Limousine Commission new applicant and was negative for all substances.

On January 16, 2019, Ms. Cooley took a private hair test through Labcorp and was negative for all substance.

Both Mr. Spencer urine and Ms. Cooley hair test Labcorp reports were identical.

**5. Labcorp inauthentic version of Mr. Spencer hair test report identified**

Mr. Spencer's 9/1/18 Labcorp hair test report that was positive for cocaine was compared to Spencer's 08/17/18 Labcorp hair test report and Ms. Cooley's 1/16/19 Labcorp hair test report. Mr. Spencer noticed that his 9/1/18 differentiate from both tests. Additionally, the 9/1/18 Labcorp report didn't include any information relating to Psychemedics Laboratory performing Mr. Spencer hair test nor did Mr. Spencer donor chain of custody. Therefore, it appear that Labcorp actually performed the hair test on Spencer's 9/1/18 collected hair sample. However, Spencer received documentation afterwards that Psychemedics also was allegedly involved with the performance of Spencer hair test.

<u>Procedural Background</u>

On August 28, 2019, Spencer proceeding pro se, filed a complaint asserting claims of negligent infliction of emotional distress, IIED, and fraud against Psychemedics and Labcorp.

On January 30, 2020, Spencer filed an amended complaint, asserting the same causes of actions against the same defendant. Thereafter, Psychemedics filed a motion to dismiss on 1/30/20 pursuant to Rule 12(b)(6).

On November 30, 2020, The district Court granted Psychemedic's motion in its entirety.

On December 18, 2020, Spencer hired a attorney and requested leave to file a second amended complaint.

On March 15, 2022, Spencer proceeding pro se filed the SAC, asserting claims of fraud , fraudulent concealment, intentional infliction of emotional distess and negligence against Labcorp, Cyrus and Dr. Reyes.

On August , 2020, Spencer and Ms. Cooley , proceeding pro se, filed their first complaint against Omega Laboratories.

5

On October 14, 2021, Spencer and Ms. Cooley re-filed their previous complaint against Omega after retaining counsel to represent their minor children

Mr. Spencer and or Ms. Cooley have filed three related suits in state court and one related suit in federal court all relating from parent's false positive hair tests from family court or private hair tests to contest their false positive hair tests. Also, for Suffolk County CPS abuse and neglect findings in family court.

In January 2019, Mr. Spence filed suit in New York State Supreme Court, Suffolk County, against E.A.C, three individual employees, Omega and four individual Omega employees. Spencer v. EAC Network, index No. 03870/2019 (N.Y Supreme Court, Suffolk County).

Mr. Spencer complaint and first amended complaint in the Eastern District of New York and state court action included fraud, intentional infliction of emotional distress, negligent infliction of emotional distress.

In May 2020, the state court dismissed the claims against Omega and its employees because the facts in the complaint were insufficient to allege personal jurisdiction over out of state individuals. E.A.C and its employees moved to dismiss the complaint. Mr. Spencer and Ms. Cooley proposed second amended complaint to add claims negligence and negligent misrepresentation, and removed intentional infliction of emotional claim.

On September 2021, Justice George Nolan granted the EAC defendants' motion to dismiss and denied the parents leave to file their second amended complaint. Spencer v. Eac Network, No. 003870/2019, 2021 N.Y. Misc. LEXIS 14609, at * 7 (N.Y Sup. Ct. Sep. 24, 2021).

In November 2020, Eastern District granted Psychemedics' motion to dismiss Spencer's fraud, intentional Infliction of emotional distress, and negligent infliction of emotional distress claims. Spencer filed an amended complaint to include a negligence claim against Labcorp. Labcorp filed a motion to dismiss, and the Eastern District of NY granted Labcorp motion.

In August 2019, Spencer filed suit in New York State Supreme Court, Nassau County against Rabu, which collected his hair sample on August 28, Doctors Review Services (MRO). Spencer v. Rabu Diagnostic Services Index No. 000949/2019 (N.Y Supreme Court, Nassau County. Spencer's complaint in this state our action alleged claims for fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress. In December 2020, the state court granted summary judgment in favor of Rabu and MRO.

6

Summary of the argument

Mr. Spencer shows that the District Court erred when incorrectly relied upon an Justice Nolan's decision to dismiss parents' complaint in state court, Spencer v. Eac Network.

Additionally, the district court erred when viewing that the parents' Negligent Infliction of Emotional Distress and Negligence claims were not plausible.

The negligence claim that Spencer pleaded against EAC differed from the negligence claim in the SAC against Labcorp. The difference between E.A.C state complaint and the SAC is that E.A.C couldn't be held liable for Omega lab performance and actions therefore no duty was owed to parents and their children.

However, Labcorp who was suppose to perform the hair follicle test and who referred another laboratory to perform the hair test, can be held liable to a test subject under common law for negligent testing or referral of Mr. Spencer biological sample. Labcorp could be held liable for Spencer's hair follicle test, based on Labcorp actions of not protecting the specimens of donors and falsely appearing as a party performing hair test and reporting that the sample was positive for cocaine, without having a sufficient chain of custody for Mr. Spencer. This made Spencer negligence claim plausible as Labcorp failed to require that the chain of custody was sufficient and or failed to require all locations of where specimens would be shipped to avoid breaching chain of custody. As a result, Labcorp failed to act in accordance with applicable laboratory testing standards/reasonable care.

Moreover, the SAC and E.A.C state complaints have no similarity based on the SAC being more precise and detailed about the conduct of Labcorp and their employees. In additional Mr. Spencer provided precise details of why Mr. Spencer hair follicle result/ litigation package was false and inaccurate. Specifically, the State complaint against E.A.C that included didn't detail the conduct of as much as the SAC against Labcorp and their employees.

**6. Mr. Spencer did not just state that he do not use drugs to make his claim plausible**

Mr. Spencer knows that a bare assertion of stating that he do not use drugs does not render his claim plausible. However, Mr. Spencer assertion that he did not use drugs, along with showing that all his hair follicle tests were falsely positive for cocaine as a result of showing evidence of such can give inference of Mr. Spencer's (9/1/18) Labcorp hair test of being falsely positive for cocaine along with showing that Labcorp hair test report wasn't authentic. All of the alleged positive for cocaine hair follicle tests of Mr. Spencer, Ms. Cooley and one of both parent's child positive urine test should have not been credited. The District Court can't rely on allegations and circumstances without clear direct evidence. All of the hair test for Mr. Spencer that was alleged to be positive all included errors, conflicts or discrepancies that ruined the integrity of Mr. Spencer hair tests on a consistent basis therefore it should not be supported evidence.

Additionally, the District Court can't rely on both Spencer's child urine test being positive for cocaine based on failing to considered all of Mr. Spencer urine tests was negative for cocaine.

7

Further, Spencer clearly stated that Labcorp and their employees failed to abide by applicable drug testing standards and reasonable standards/care that included confirming that hair collections were properly collected and confirming that chain of custody was properly. Labcorp performance failed for not providing reasonable care/judgment in not having a valid chain of custody for tracking Mr. Spencer hair sample where Spencer received a phony "labcorp" hair test report version that was outdated. Mr. Spencer also asserted that Labcorp failed to ensure that his hair test would be performed within applicable standards and produce accurate results. Labcorp actions of not confirming chain of custody to track a hair sample and confirm that hair collection was properly collected are part of the scientific integrity of the tests and the scientific integrity of the test is affected once a procedure is omitted.

**7. Negligent Infliction of Emotional Distress Claim**

The Spencer claim for negligent infliction of emotional distress is plausible where he alleged: (1) breach of duty owed to them, (2) emotional harm, (3) a direct causal connection between the breach and the emotional harm, and (4) circumstances providing some guarantee of genuineness of the harm." The causation element was satisfied where the Spencer plausibly allege mental injuries" was a direct, rather than a consequential, result of the [negligence]. The "guarantee of genuineness was satisfied where the particular type of negligence is recognized as providing an assurance of genuineness. This Court can easily recognize that reporting out Mr. Spencer hair follicle test inaccurately can cause foreseeable harm where Mr. Spencer were harmed in family court after being delayed from parental rights and also didn't work as a TLC and Commercial truck driver after being emotionally damaged as a result of Labcorp and its employees conduct, which constitute as a special circumstance to allow for the recovery of purely emotional harm.

Mr. Spencer has plausibly alleged that Labcorp violated a duty when they failed to engage in reasonable policies/ protocols and average laboratory practices to even prove the scientific integrity of the testing process of Mr. Spence hair tests. Also, Mr. Spencer SAC asserts emotional damages.

Further, the unreasonable actions of Labcorp/ individuals did not practice relevant professional standards. Therefore, Mr. Spencer claim for negligent infliction of emotional distress under New York law was rendered and his claim for negligent infliction of emotional distress should have survived Labcorp Motion to dismiss. Mr. Spencer did not need to satisfy breach of duty that endangered his physical safety, he only needed to satisfy the guarantee of genuineness and show that he suffered from mental injuries" as a direct, rather than a consequential, result of the [negligence]. Further, Spencer SAC asserts that Omega knew that reporting out a family court donor and a private donor hair tests falsely positive would result in emotional harm.

STANDARD OF REVIEW

This Court reviews decisions granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) *de novo mixed questions of law and fact*. See, Atateks Foreign Trade Ltd. V. Private Label Sourcing, LLC, 402 F. App'x 623, 625 (2d Cir. 2010). In so doing, this Court must "assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." See Bell Atlantic Corp. v. Twombly, 550 U.S 544, 570 (2007). A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The District Court's ruling denying Spencer Negligence claim and or Negligent Infliction of Emotional Distress are for review for abuse of discretion.

ARGUMENT

**8. The District Court erred when incorrectly issuing that the Negligence claim and or Negligent Infliction of Emotional for Mr. Spencer wasn't plausible.**

    The SAC asserts the foreseeability actions of Labcorp and compared normal and abnormal laboratory practices of Labcorp procedures. Also, the SAC shows how Labcorp practices were not normal procedures in regards to Spencer false positive hair follicle test, which Labcorp and their employees breached duty they owed to Mr. Spencer and caused damages to Spencer. See, Sharpe v. St. Lukes Hosp., 573 Pa. 90, 821 A.2d 1215 (Pa. 2003) (finding that hospital which had collected an employee's urine sample for drug testing pursuant to a contract with an employer to collect urine samples for substances abuse testing program owed a duty of care to employee in processing the specimen). "as well as that of certain federal courts concluding that New York would recognize such a duty, "Landon, 22 N.Y.3d at 7 (citing Drake v. Lab. Corp. of Am. Holdings, No. 02 Civ. 1924 (FB) (RML), 2007 WL 776818, at 2 (E.D.N.Y. Mar. 13, 2007) (denying motion to dismiss negligence claim against defendants contracted or subcontracted to collect, test and analyze employee urine samples, finding that the defendants had duty of care to employee with whom they had no direct contractual relationship to perform the test in non-negligent fashion), aff. 417 F. App'x. 84 (2d Cir. 2011); Coleman, 30 F. Supp 2d at 365 (E.D.N.Y 1999) (same); see also Shaw v. Psychemedics Corp., 426 S.C. 194, 200 (S.C 2019) (finding that a drug testing laboratory that contracts with an employer to conduct and evaluate employee drug tests owes a duty of care to the employee test subjects for the the purposes of a negligence claim alleging failure to properly and accurately perform the test and report the results). In Pasternack v. Laboratory Corporation of America Holdings, 27 N.Y.3d 817, 820-821, 826-827 (N.Y. 2016), the New York Court of Appeals declined to find that the defendants-a corporation that had contracted with an airline employer to help administer its pilot drug testing program and its subcontractor lab- owed a duty of care to the plaintiff pilot to comply with certain Department of Transportation ("DOT") drug testing regulations. In Pasternack, Federal Aviation Administration ("FAA") regulations required the plaintiff to submit to random drug testing. DOT regulations required that the urine specimen collector was required to specifically tell the employee that if he left the collection site before producing the sufficient amount of urine it would be considered a " refusal to test" and reported. The plaintiff alleged that he left because the defendants negligently failed to inform him of this requirement, and that the defendants then reported to the FAA that the plaintiff had refused to test, which caused the plaintiff adverse professional consequences. The Court held that on these facts, that the defendants did not owe the plaintiff a duty of care arising from the DOT'S "ministerial" notice requirement, and clarified that Landon stood for the proposition that a drug-testing program administrator's duty of care under New York negligence law is created by a failure to adhere to standards that "implicate the scientific integrity of the testing process.

9

The District Court and Labcorp relied on Pasternack in support of proposition to state that Labcorp owed Mr. Spencer no duty. However, Labcorp actions should have been viewed as actions that could cause a inaccurate result that would implicate the scientific integrity of their testing process. Its clear that Labcorp failed to make sure the services surrounding hair testing for Mr. Spencer abided by applicable drug testing standards and reasonable care. Additionally, Mr. Spencer plausibly stated that the results of drug tests can have a deeply damaging effect on the lives of the tested. Testers know that courts/ donors and employers rely on these tests/ services in order to make life-changing decisions. Defendants had a duty of care/ standard duty to perform their work in a competent, reasonable manner and defendants were negligent in doing their jobs which impacted Mr. Spencer and defendants breached duty owed to Mr. Spencer. See also, Gonzalez v. Aramark Food & Support Servs. Grp., Inc, No. 09 Civ. 4843 (CBA), 2012 WL 1019982, at *7 (E.D.N.Y. Mar. 26 2012) (finding that the breadth of defendant food service contractor's training and management responsibilities meant it was "[c]ertainly in the best position to prevent hazards" arising from food service equipment that had harmed a third-party negligence claimant.).See also, Landon v. Knoll Laboratory Specialist, Inc., 22 N.Y.3d 1, 4-6 (N.Y. 2013), in which the defendant drug testing laboratory had a contract with a state probation department to test probationers' oral fluid samples for illicit or controlled substances, and the plaintiff alleged that the laboratory falsely reported that he had tested positive for THC in connection with its performance of a toxicology test that failed to adhere to federal and manufacturer cutoff standards and state confirmatory testing requirements. As a result, the government commended probation-vocation proceedings against the plaintiff. Landon held that despite the absence of a contract between the plaintiff and defendant, the laboratory owed duty of care to test the plaintiff's biological sample "in keeping with relevant professional standards."

The parents claims for negligent infliction of emotional distress are plausible where they alleged: (1) breach of duty owed to them, (2) emotional harm, (3) a direct causal connection between the breach and the emotional harm, and (4) circumstances providing some guarantee of genuineness of the harm." The causation element was satisfied where the parents' plausibly allege mental injuries" was a direct, rather than a consequential, result of the [negligence]. The "guarantee of genuineness was satisfied where the particular type of negligence is recognized as providing an assurance of genuineness. This Court can easily recognize that reporting out parents hair follicle test based on foreseeable harm which the parents were in family court and continued to remain without custody rights for their children could likely constitute a special circumstance to allow for the recovery of purely emotional harm. See, Taggart v. Costabile, 131 A.D.3d 243, 253, 14 N.Y.S.3d 388 ( N.Y App. Div. 2d Dep't 2015) to assert the FAC did not assert the "guarantee of genuineness" requirement based on Courts recognizing only a limited number of circumstances, including "the mishandling of a corpse or the transmission of false information that a parent or child had died. Also See, Ornstein v. N.Y.C Health & Hosps. Corp. 852 N.Y.S.2d 1,3 (N.Y 2008) recognizing claim where plaintiff alleged emotional distress arising from negligent exposure to HIV). However, Spencer SAC should have survived case on Spencer emotional damages. See Brown v. New York Design Ctr., Inc., 2023 WL 2417772

(N.Y. App. Div. 1st Dept Mar. 9, 2023) (where 17 Women filed for Negligent Infliction of Emotional Distress and Negligence, On April 2014, while using the men's bathroom at one such showroom in Manhattan, an electrician working for NYPD discovered a camera with a recording device pointed through a hole in the wall of the men's bathroom and into a stall of the adjacent women's bathroom. (NYPD) ultimately retrieved the camera, which contained graphic videos of women using the bathroom. The NYPD could not determine whether other videos existed or if any footage had been disseminated to others. All plaintiffs alleged they experienced "paranoia and or hypervigilance" following the camera's discovery, with "many engaging in behavior such as habitually checking vents or looking for other spaces where cameras could be hidden.

## 10. The District Court Erred when relying upon and being persuaded by Justice Nolan's Decision to dismiss parents' complaint in state court, Spencer v. Eac Network.

The negligence claims that Spencer pleaded against EAC differed from the negligence claim in the SAC against Labcorp. See, Spencer v. Eac Network. The difference between E.A.C state complaint and the SAC is that E.A.C couldn't be held liable for Omega lab performance and actions therefore no duty was owed to parents and their children. However, Labcorp who was supposed to be fully responsible for Mr. Spencer hair follicle test performance , can be held liable to a test subject under common law for negligent testing of a biological sample. See Landon v. Knoll Lab. Specialist, Inc., 91 A.D.3d 79.

Spencer did not just state that he did not use drugs. Spencer also showed that all of the cocaine positive hair test that the District Court and Labcorp relied on was falsely positive for cocaine which included errors, conflicts and discrepancies that ruined the integrity of Spencer's hair tests on a consistent basis. See, Biswas v. City of N.Y., 973 F. Supp. 2d 504 (S.D.N.Y. 2013)

    Additionally, the District Court can't rely on Spencer's child urine test being positive for cocaine based on all Spencer urine tests being negative for cocaine and Spencer child not being cared for him within the timeframe when his child was alleged to be positive. Also, Spencer showed how Labcorp and their employees violated a duty of care and engaged in unreasonable laboratory practices. Spencer negligence/ negligent infliction of emotional distress claims are particularly plausible. See Bertuglia v. City of N.Y, 839 F. Supp. 2d 703 (S.D.N.Y 2012), See also, Steele-Warrick v. Microgenics Corp., 19-cv-6558 (VMS) (E.D.N.Y Mar. 22, 2021) (Defendants Motion to dismiss Negligence claim denied)

    Based on the above, The District Court Erred when relying upon and being persuaded by Justice Nolan's Decision to dismiss parents' complaint in state court, Spencer v. Eac Network and failing to consider materials attached to the SAC that inferred truth. See Twombly, 550 U.S at 555

11

A motion to dismiss will be denied where the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqual, 556 U.S at 678. Labcorp failed to disprove or rebutted the SAC facts and therefore, Spencer claim for Negligence and or Negligent Infliction of Emotional Distress should have survived. See, Bell Atlantic Corp. v.Twomby, 550 U.S 544 (2007)

For the reasons above, The District Court dismissal for negligence and or negligent infliction of emotional distress should be reversed..

## CONCLUSION

I therefore respectfully ask that this Court reverse the judgment of the district court dismissal of Appellant claim for Negligence and or Negligent Infliction of Emotional Distress.

Dated: December 19, 2024            Respectfully submitted,

Jahquan Spencer, Pro Se

Plaintiff-Appellant

12

## CERTIFICATE OF COMPLIANCE

I, Jahquan Spencer, certify that this brief contains 5,156 words.

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Jahquan Spencer

v.

Laboratory Corporation of America Holdings, Glennette Cyrus, Araceli Reyes, Et al

**CERTIFICATE OF SERVICE***

Docket Number: 24-2363

I, Bernadine Cooley, hereby certify under penalty of perjury that
(print name)

on 12/20/2024, I served a copy of Appellants brief/appendix
(date)

(list all documents)

by (select all applicable)**

___ Personal Delivery      X  United States Mail      ___ Federal Express or other Overnight Courier

___ Commercial Carrier     ___ E-Mail (on consent)

on the following parties:

Labcorp, Glennette Cyrus Attorney Robert Steiner
Name Kelly Drye & Warren LLP  Address 3 World Trade Center  City New York  State NY  Zip Code 10007

175 Green St

Araceli Reyes, 69 First Ave, New York, NY 08869
Name              Address              City              State   Zip Code

Name              Address              City              State   Zip Code

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

12/20/2024                                    Bernadine Cooley
Today's Date                                   Signature

Certificate of Service Form (Last Revised 12/2015)